56 CCPA

**Application of Douglas H. PACK, Wayne O. Ursenbach and Frank Hatton-Ward.**

**Patent Appeal No. 8176.**

United States Court of Customs and Patent Appeals.

May 29, 1969.

Edwin M. Thomas, Phoenix, Ariz., attorney of record, for appellants.

Joseph Schimmel, Washington, D.C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, HOLTZOFF and McLAUGHLIN, Judges, sitting by designation, ALMOND and BALDWIN, Associate Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejections of claims 1–9, on prior art under 35 U.S.C. § 102, in appellants' application entitled "Packaging for Slurry explosives."[1] No claim has been allowed.

The invention is a unit package of explosive blasting composition or a plurality of such packages connected in a column. A filled tubular package closed at one end receives a second package to close its other end. The filling material is a pourable liquid or semi-liquid slurry which flows as a viscous liquid under ordinary temperature conditions. Packages of this type are used for blasting in slender boreholes or in wells, for example, in oil wells.

Referring to Figs. 1–5, reproduced below, one form of the invention is shown. Individual tubular containers 11 are made by extruding or blow molding plastic material. The tube 11 is shown as having a reduced end element 13, a

1. Serial No. 497,587 filed September 24, 1965 (continuation in part of serial No. 330,861 filed December 16, 1963).

so-called male coupling portion, which also includes a transverse closure element 33, and an open upper end or female coupling portion. In this form, plural containers are adapted to be joined together in pairs or series as shown in Fig. 5, being secured by bayonet type joints shown in Figs. 3 and 4. A second form, not shown, is a container adapted to be joined with others by means of screw thread joints. A plurality of sections so connected may then be lowered into a borehole or other receptacle for blasting.

FIG.1 FIG.2 FIG.3 FIG.4 FIG.5

Claims 1 and 9 are illustrative:[2]

1. A container for explosives adapted for inter-connection with like containers to form an explosive column assembly, which comprises:

(a) a thin-wall elongated substantially cylindrical blown plastic container having explosive disposed therein throughout the major length of the container,

(b) an externally threaded male coupling and end closure on one end of the container,

(c) an internally threaded female coupling on the other end of the container, the female coupling extend-

2. Emphasis has been supplied to highlight the claim portions in controversy.

ing beyond the explosive the remaining length of the container, and

(d) the male coupling having a reduced external diameter relative to the internal diameter of the female coupling and the end closure of said male coupling *having protrusion means to contact and to press against the explosive adjacent thereto* so that like containers of explosive slidably and threadedly interconnected by the male and female couplings to form an explosive column assembly *have the end closures of the male coupling exerting compressive force on adjacent explosive within the female couplings.*

9. A blow molded plastic container capable of being assembled with other like containers to form an elongated assembly, said container comprising an elongated tube of uniform outside diameter throughout most of its length, said tube having a male coupling on one end and a female coupling on the other end, and adapted to be filled with explosive between said couplings, said female coupling being of the same overall outside diameter as the tube and the male coupling being enough smaller to fit within a female coupling on another like tube, interengageable locking means on the inside of the female coupling and on the outside of the male coupling, the arrangement being such that on assembly of filled plural like containers, *the male coupling will tightly press upon and pack the explosive in the adjacent container, whereby a substantially rigid and continuous explosive column of explosive may be assembled,* the tubular walls being slightly deformable when filled to make possible insertion past minor obstacles into boreholes of essentially the same diameter as said outside diameter.

Claims 2 to 8 contain recitations substantially the same as those emphasized in claim 1 and need not be treated separately from it.

The references relied upon [3] admittedly meet the appealed claims, which were substantially copied therefrom, and hence their discussion is unnecessary.

The only issues involved in this appeal are: (1) whether the disclosure of appellants' parent application [4] is adequate under 35 U.S.C. § 112 as a disclosure of the subject matter of the claims on appeal and (2) whether any of the several affidavits filed by and on behalf of the appellants taken either alone or together are adequate under Rule 131 to establish reduction to practice of the subject matter of the claims on appeal prior to the effective date of the references. An affirmative answer to either of these questions will remove the references as prior art.

The examiner's position is set forth in the final rejection:

* * * the crux of the claimed invention appears to reside in the concept of placing the contents of a container under compression by a male coupling element *contacting and pressing* against the contents. Nowhere in the affidavits or exhibits is there an adequate showing that applicants' male element contacts and presses against the contents of the adjoining container. Nor is there any basis in applicants' original disclosure (application serial No. 330,861) for the claimed coupling wherein the male coupling element places the contents of an adjoining container under compression. * * * Furthermore, it is not seen, from applicants' disclosed device how the male coupling element can place the contents of an adjoining package under compression. Note that * * * [in] the specification

3. Hamilton, U. S. Patent Nos. 3,185,091 and 3,185,092, both issued May 25, 1965, and Foster, U. S. Patent No. 3,186,340, issued June 1, 1965. All were filed on January 10, 1964.

4. Serial No. 330,861, filed December 16, 1963 and containing drawings identical to those in the application on appeal.

it is disclosed that explosive is filled *up to the internal shoulder 15* of applicants' container. It would appear to be impossible for applicants' male coupling element to compress any explosive in an adjoining container since shoulder 15 would effectively block any longitudinal movement towards the explosive. Furthermore, from exhibit B, showing applicants' modification * * *, it is noted that there is a .05 rise in the bottom of the male coupling element. Therefore it would appear unlikely that the bottom of the coupling would ever come into contact with the explosive in an adjoining container.

In affirming, the board considered claims 1 to 8 apart from claim 9. With respect to exemplary claim 1 of claims 1 to 8, it found that:

> * * * we are unable to read the emphasized portions of part (d) thereon. In the instant case, the male coupling has a flat end wall 33 in the bayonet coupling species of Figs. 1 through 5 and a flat end wall 125 in the screw coupling species of Figs. 6 and 7. Nowhere in the description of the original application and nowhere in the specification of the instant application (as distinguished from the claims herein presented) do we find any description of the male coupling having "protrusion means" for the purposes otherwise specified in the emphasized portion of claim 1.

> \* \* \* \* \* \*

> The protrusion, as is evident, is to provide a force multiplying factor in applying pressure in addition to the force multiplying factor of screw threads.

As to claim 9, the board referred to the parent application, finding that:

> There is no mention in the objectives of the invention of applying pressure to the explosive contents. The specification of the parent case does not disclose filling to such a degree that the lower flat end in either species is capable of contacting the explosive in the vertical position of the cartridges.

> The disclosure in the paragraph, and even more particularly in the sentence bridging pages 7 and 8, is

> "\* \* \* The unit container can be filled with liquid or flowable slurried explosive, or with granular prills and oil, up to the internal shoulder 15 which supports the bottom of the next section when two or more units are assembled."

> As is evident from inspecting Fig. 2, if the explosive is up *to* internal shoulder 15, since flat wall 33 is stopped at the upper part of this shoulder, there is a slight air space.

> \* \* \* \* \* \*

> In addition we call attention to the statement [in the parent specification] that states, relative to flat closure 33:

> "\* \* \* These transverse closures may sometimes be omitted, if desired, e.g., where plural sections are to be joined before filling. However, the structure shown is normally preferred."

> If omitted, under no circumstances can it apply pressure. \* \* \*

> \* \* \* \* \* \*

> The following description \* \* \* [in the parent specification] is relied upon heavily. We reproduce with certain emphasis added.

> "In use, any number of sections of either type may be filled one by one and assembled as they are pushed into place. In this manner, a *relatively* rigid container, filled *essentially* completely from end to end and packed to a *desired* tightness with the slurry, can be inserted into bore holes at much in the same way as solid explosive. *Except for the very minor gaps formed by the end closures 33 or 125*, the slurry explosive is continuous from one end of the assembly to the other and there is no problem of propagation of the

detonation wave. In many structures of the prior art, this feature, which is often critical with slurry explosives, has not been available because the structures proposed for assembly have, in many cases allowed or necessitated substantial gaps in explosive filler. The containers of this invention are quite firm and solid when filled but they are *slightly deformable* and are thus often capable of being pushed past minor obstructions where a solid metal container of similar diameter might be blocked."

It will be seen that, with the described mode of filling, leaving air gaps with a thickness dimension equal to shoulders 15 or 115, that the above description is accurate. The flexible container is made "relatively" rigid due to its own structure including its own wall thicknesses. It is filled "essentially" completely except for the minor amounts described. This air space represents the "desired" degree of tightness. "Except for the very minor gaps formed by the end closures 33 or 125", the slurry explosive is continuous. We point out that this is consonant with the disclosure of the minor air gaps formed by the enclosures 33 or 125 contacting the corresponding shoulders when the slurry comes up "to" the shoulders.

The board also agreed with the examiner that the affidavits were insufficient. No reconsideration of the board's decision was sought.

We are unable to find error in the board's position with respect to claims 1 to 8. Appellants argue in their brief that:

The general bottom part 25, 27, 33, Fig. 2, protrudes from the upper part of the male end, e. g. below element 13. * * * See also part 33 in the assembly of Fig. 5.

Further, they state:

* * * looking at Fig. 2, and the upper line 15 there, it is clear that the rebated corner of end element 33 could and would extend around or at least part way down past the rib 15. This protruding bottom 33, Fig. 2, definitely would put the contents under compression; certainly if the lower tube were filled any where near to the level of the upper dotted line indicated at 15 of Fig. 2. *But appellants do not ask for such a precise construction.*

*In fact, appellants do not base their case on the tenuous differences between Figs. 1 and 2 * * *.* [Emphasis added.]

■ Neither do we. The claim language requires "the *end closure* of said male coupling having protrusion means." Appellants' parent specification refers to transverse *closure* elements 33 and it is manifest from the drawing that such do not have protrusion means nor are any described. Of the various affidavits, dealing primarily with the concept of placing the tube contents under compression, the affidavit executed by appellants and submitted on March 16, 1966 is the sole one concerned with the structure of the container and allegedly discloses in exhibits A and B thereof working drawings of the invention. Such drawings do not appear to be substantially different from those appearing in the application and fail to disclose the protrusion means. The decision of the board with respect to claims 1 to 8 is affirmed.

Turning to claim 9, characterized by appellants as "stat[ing] the invention most aptly and * * * [being] slightly broader than the others" and properly treated, we believe, apart from the others, we find ourselves in disagreement with the board's interpretation of appellants' parent specification relative to it.

Having interpreted a portion of the disclosure as suggesting a slight air space between the assembled tubular sections, the board then proceeded with an unnecessarily strained reading of pertinent portions of appellants' parent disclosure indicating the absence of air gaps in order to find them "consonant

with the disclosure of the minor air gaps."

Referring to the emphasized portions of claim 9 and the portions of appellants' parent specification quoted in the board's opinion, reproduced above, it is seen that the assembled container is "filled essentially completely from end to end and packed to a desired tightness with the slurry," the only gaps being those formed by the end closures. Moreover, claim 14 of the parent application refers to an assembly in which "a continuous mass of explosive fills the assembly from one end to the other except for a single thickness of intervening end closure material at each joint." The above language precludes, in our opinion, the presence of an "air gap." Nor does the relative language "can be filled * * * up to the internal shoulder 15 which supports the bottom of the next section" require the presence of an air space, when considering the teaching of the specification as a whole. Appellants' specification also speaks of "combining the compressive strength of the contents with the tensile strength of the package wall material" to obtain rigidity, a further indication that the liquid contents are under some compression.

■ We note, in passing, that appellants' disclosure may be consonant with an interpretation that the tubular containers are filled and assembled in such a fashion that while no air gaps are present neither does the male coupling tightly press upon and pack the explosive thereby resulting in a precise mating of the two adjacent surfaces. However, no such construction was advanced below nor are we prepared to assume such in the face of the unlikely ability to obtain such precise control in this area of technology as well as the impracticability thereof. Since we find support for claim 9 in appellants' parent application, it is unnecessary for us to consider the affidavits in this regard. The decision of the board with regard to claim 9 is accordingly reversed.

Modified.